including, without limitation, inspection of the premises and the posting of such notices and other written or printed material thereon as Lender may deem appropriate or desirable.

6.5    LENDER MAY EXAMINE BOOKS AND RECORDS. Lender shall have the right, from time to time, acting by and through its employees or agents, to examine the books, records, and accounting data of Borrower, and to make extracts therefrom or copies thereof. Borrower shall promptly make such books, records, and accounting data available to Lender, as stated above, upon written request, and upon like request shall promptly advise Lender, in writing, of the location of such books, records, and accounting data.

6.6    PAYMENT OF TAXES. Borrower shall pay and discharge all taxes, assessments, and governmental charges or levies imposed upon Borrower or upon Borrower's income or profits, or upon any Property belonging to Borrower prior to the date on which penalties attach thereto, and all lawful claims which, if unpaid might become a lien or charge of a material nature upon any of Borrower's Property, provided that Borrower shall not be required to pay any such tax, assessment, charge, levy or claim which is being contested in good faith and by proper proceedings if Borrower maintains adequate reserves with respect thereto.

6.7    COMPLIANCE WITH LAWS AND CONTRACTS. Borrower shall comply with the requirements of all applicable Laws and orders of any Governmental Agency, provided that if Borrower has not so complied by the date prescribed in any such Law, order or regulation, Borrower shall comply therewith by the date set forth in any order of the Governmental Agency charged with the enforcement of such Law, rule or regulation if such date is later, and comply with all contracts, agreements, indentures or instruments by which Borrower is bound.

6.8    MAINTENANCE OF PROPERTY. Borrower shall use Borrower's best efforts to maintain and preserve, or cause to be maintained and preserved, all of Borrower's Property, necessary or useful in the proper conduct of Borrower's business, including such as may be under lease, in good working order and condition, ordinary wear and tear excepted.

6.9    MINIMUM DEBT SERVICE RATIO. As of the date hereof, and at all times thereafter, Borrower shall maintain, as of the last calendar day of each month, a Debt Service Ratio of at least 1.10:1.00.

6.10    [Intentionally omitted.]

6.11    LIMITATION OF DISPOSITION OF ASSETS. Except for Assets or Property sold, leased or otherwise disposed of in the ordinary course of business, Borrower shall not convey, sell, lease or otherwise dispose of Property or Assets without the prior written consent of the Lender.

6.12    LIMITATION ON NEW DEBT. Borrower shall not incur additional debt (including, without limitation, any contingent indebtedness such as in the form of a guaranty) in an amount greater than Fifty Thousand and No/100 Dollars ($50,000.00) per year, in the aggregate, during the term of the Loan without prior written approval from the Lender.

6.13    REPORTING REQUIREMENTS. So long as Borrower shall have any obligation to Lender under this Agreement and/or the Loan Documents, Borrower shall deliver to the Lender the following financial statements and reports:

6.13.1   As soon as practicable and in any event within five (5) days after Borrower knows or should reasonably have known of the commencement of any legal action against Borrower, except actions seeking money judgment that are fully insured or bonded, a report of the commencement of such action containing a statement signed by the chief financial officer of Borrower setting forth details of such legal action and any action Borrower proposes to take with respect thereto;

6.13.2   Within five (5) days of the occurrence of any Event of Default or event which, with the giving of notice or lapse of time, or both, would constitute an Event of Default, a report regarding such Event of Default or event setting forth details and describing any action which Borrower proposes to take with respect thereto, signed by an officer of Borrower;

6.13.3   Any change in name of Borrower or use of any trade names or trade styles not presently used;

6.13.4   As soon as available and in any event within ninety (90) days after the end of each fiscal year of Borrower, a copy of Borrower's reviewed Financial Statements for such year, prepared by an independent certified public accountant of recognized standing acceptable to Lender in its sole opinion and judgment and certified by Borrower to be true and correct;

6.13.5   As soon as available and in any event within ninety (90) days after the end of each fiscal year of Borrower, copies of Guarantor's personal Financial Statements for such year, originally signed and certified by Guarantor to be true and correct;

6.13.6   As soon as available and in any event within thirty (30) days of applicable Internal Revenue Service filing requirements with respect to Borrower's income tax returns then due, true and complete copies of Borrower's Federal income tax returns bearing the original signature of Borrower;

6.13.7   As soon as available and in any event within thirty (30) days of applicable Internal Revenue Service filing requirements with respect to Guarantor's income tax returns then due, true and complete copies of Guarantor's Federal income tax returns bearing the original signature of Guarantor;

6.13.8   Promptly upon receipt thereof, one (1) copy of any other report submitted to Borrower by independent accountants in connection with any annual, interim or special audit made by them of the books of Borrower;

6.13.9   Within five (5) days of (i) any contact from any Governmental Agency concerning any environmental protection Laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous waste, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third party against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous waste, or hazardous materials, or (iii) Borrower's discovery of any occurrence or condition on the Property or on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any Law, Borrower shall deliver to Lender a report regarding such contact, claim, occurrence or condition

and setting forth in detail and describing any action which Borrower proposes to take with respect thereto, signed by an officer of Borrower;

6.13.10 Within five (5) business days of becoming aware of any developments or other information which may materially and adversely affect Borrower's properties, business, prospects, profits or condition (financial or otherwise) or Borrower's ability to perform any of Borrower's obligations under this Agreement or the other Loan Documents, telephonic or telegraphic notice specifying the nature of such development or information and such anticipated effect, which shall be promptly confirmed in writing;

6.13.11 Concurrent with the delivery of the Financial Statements, a Compliance Certificate, in the form attached as Exhibit "B", wherein Borrower represents and warrants that (a) no Event of Default has occurred, or, in the Event of Default, corrective action has been taken; and (b) Borrower has complied with the financial covenants contained in this Section 6; and

6.13.12 Such other information respecting the business, Property or the condition or operations, financial or otherwise, of Borrower as the Lender may from time to time request.

6.14    LIMITATION ON DISTRIBUTIONS, PAYMENTS, AND ADVANCES. Without the prior written consent of Lender, which consent Lender may withhold in its sole discretion, opinion and judgment, (a) Borrower shall not pay any employment compensation or other remuneration, or make any other distributions, to the owners of Borrower's Equity, and any compensation paid for personal services shall not be paid in advance of services actually rendered, and (b) Borrower shall not make any advances or extensions of credit to the owners of Borrower's Equity, whether in the form of advances, loans, distributions, or dividends, including, without limitation, distributions of interests constituting part of Borrower's Equity or other property of Borrower.

6.15.    ASSIGNMENT OF LIFE INSURANCE POLICIES. Borrower shall, at all times until the full amount of all indebtedness under the Loan shall be repaid and all obligations of Borrower fully discharged, keep and maintain in full force and effect Life Insurance Policy as herein defined and provided, irrevocably assigned to Lender to additionally secure repayment of the Loan. Borrower shall execute and deliver to Lender, from time to time, and prior to the termination or cancellation of any then current Life Insurance Policy, one or more written assignments of all right, title and interest of Borrower and the insured in and to all proceeds and benefits of each such Life Insurance Policy, pursuant to one or more Assignments of Life Insurance Policy in form and content acceptable to Lender in its sole opinion and judgment.

6.16    TRANSACTIONS WITH AFFILIATES - Borrower shall not, without the prior written consent of Lender, enter into, or cause, suffer or permit to exist, any arrangement or contract with any of Affiliates, including, but not limited to, those for the provision of service, whether by Borrower, Guarantor or any Affiliate or for the purchase and sale of goods, except for the Lease Agreement dated October 1, 2000, by and between Oxford Investments, LLC and Borrower.

## 7    SECTION SEVEN. EVENTS OF DEFAULT

Borrower shall be in Default under this Agreement if, at any time until the Loan is paid if full:

7.1    **DEFAULT UNDER LOAN DOCUMENTS.**  Borrower, Guarantor or other obligor fails to pay principal or interest, or both, when due under the terms of this Agreement; or Borrower, Guarantor or other obligor fails to perform or observe any other term, covenant, or agreement contained in this Agreement or in any of the other Loan Documents, which failure may be cured by the payment of money, and, in any of such events, such failure continues for a period of ten (10) days from the date such payment or performance was due; or Borrower, Guarantor or other obligor fails to perform or observe any term, covenant or agreement contained in this Agreement or in any of the other Loan Documents, which failure cannot be cured by the payment of money and such failure continues for a period of fifteen (15) days after the Lender gives written notice to Borrower specifying such default.

7.2    **BREACH OF WARRANTY.**  Any warranties or representations made or agreed to be made in this Agreement or in any of the other Loan Documents are breached in any material respect or prove to be false or misleading in any respect when made.

7.3    **LITIGATION AGAINST BORROWER.**  Any suit is filed against Borrower, which, if adversely determined, could substantially impair the ability of Borrower to perform any or all of Borrower's obligations under and by virtue of this Agreement or any of the other Loan Documents, unless Borrower's counsel furnishes to Lender its opinion, to the satisfaction of Lender and Lender's counsel in their sole opinion and judgment, that, in the judgment of Borrower's counsel the suit is essentially without merit.

7.4    **LEVY UPON PROPERTY.**  A levy is made on the Property, or any of them, under any process and such levy is not bonded over or continues unstayed for thirty (30) days or more.

7.5    **ACCELERATION OF OTHER DEBTS.**  Borrower does, or omits to do, any act, or any event occurs, as a result of which any material obligation of Borrower, whether or not arising hereunder and/or relating to Borrower's ability to perform hereunder, may be declared immediately due and payable by the holder thereof.

7.6    **BANKRUPTCY.**  Borrower or Guarantor fails to pay their debts as they become due, or makes an assignment for the benefit of creditors, or admits, in writing, an inability to pay debts as they become due, or files a petition under any chapter of the Federal Bankruptcy Code or any similar law, now or hereafter existing, or becomes "insolvent" as that term is generally defined under the Federal Bankruptcy Code, or in any involuntary bankruptcy case commenced against Borrower or Guarantor files an answer admitting insolvency or inability to pay debts as they become due, or fails to obtain a dismissal of such case within thirty (30) calendar days after commencement or convert the case from one chapter of the Federal Bankruptcy Code to another chapter, or is the subject of an order for relief in such bankruptcy case, or is adjudged a bankrupt or insolvent, or has a custodian, trustee, or receiver appointed for, or has any court take jurisdiction of, properties of Borrower or Guarantor, or any part thereof, in any voluntary or involuntary proceeding, including, but not limited to, those for the purpose of reorganization, arrangement, dissolution, or liquidation, and such custodian, trustee, or receiver is not discharged, or such jurisdiction is not relinquished, vacated, or stayed within thirty (30) days after the appointment.

7.7    **BORROWER STATUS.**  Without Lender's prior written consent, Borrower is liquidated, dissolved, or fails to maintain its status as a going concern, or more than ten percent (10%) in the aggregate of Borrower's Equity is transferred or pledged.

28

7.8    <u>EXECUTION LEVY</u>. Execution is levied against the Property, Collateral, or any of them, or any lien creditor commences suit to enforces a judgment lien against the Property, or any of them, and such action or suit is not bonded or continues unstayed for a period of thirty (30) days or more.

7.9    <u>ATTACHMENT</u>. Any proceeding is brought, the object of which is that any part of the Lender's commitment to make the Advances hereunder at any time subject or liable to attachment or levy by any creditor of Borrower.

7.10    <u>DESTRUCTION</u>. Any part or all of the Property, or any of them, is materially damaged or destroyed by fire or other casualty and the loss proves to be inadequately covered by insurance actually collected or in the process of collection to restore such Property to Borrower's condition prior to such fire or other casualty.

7.11    <u>MISAPPLICATION OF LOAN PROCEEDS</u>. Borrower uses Loan Proceeds for purposes other than those stated in Section 4.4, or fails to use Loan Proceeds for the purchase of any of the Equipment identified in Schedule 1.

7.12    <u>MISREPRESENTATION AND/OR NON-DISCLOSURE</u>. Borrower has made certain statements and disclosures in order to induce Lender to make the Loan and enter into this Agreement, and, if Borrower has made any material misrepresentation or failed to disclose any material fact, Lender may treat such misrepresentation or omission as a breach of this Agreement. Such action shall not affect any remedies Lender may have for such misrepresentation or non-disclosure.

7.13    <u>FINANCIAL CONDITION</u>. There is any material adverse change in Borrower's financial condition.

7.14    <u>REVOCATION</u>. Guarantor revokes or attempts to revoke his Guaranty.

## 8    SECTION EIGHT. REMEDIES

8.1    <u>CEASE PAYMENT AND/OR ACCELERATE</u>. Upon, or at any time after, the occurrence of an Event of Default or upon the occurrence of a default in any other joint and/or several obligation or obligations of the Borrower to Lender, Lender shall have no obligation to make any further Advances, and all sums disbursed or advanced by Lender and all accrued and unpaid interest thereon, and all other amounts and/or payments due under the Loan Documents, shall, at the option of Lender, become immediately due and payable, without notice or demand, and Lender shall be released from any and all obligations to Borrower under the terms of this Agreement.

8.2    <u>DISPOSITION OF COLLATERAL</u>. Upon the occurrence of an Event of Default and until Borrower cures such default and all other defaults then existing, within any applicable cure period provided for in the Loan Documents, Lender may at its option: (a) declare any part or all of the Indebtedness immediately due and payable, without demand or notice and terminate any agreement for the granting of further credit; (b) immediately take possession of all or any part of the Collateral wherever located or require Borrower to assemble or deliver all or any part of the Collateral to any place designated by Lender; (c) sell, lease or otherwise dispose of any Collateral at public or private sale, as a whole or in parcels, from time to time, upon such notice as may be required by law and prior to any sale, Lender may at its option, complete the processing of, repair or

recondition any Collateral to the extent Lender deems necessary and any sums expended by Lender for processing or repair shall be added to the Indebtedness; (d) take possession of the premises of Borrower to complete any processing, repairing and reconditioning or to conduct any sale of the Collateral or to store any Collateral, all without compensation to Borrower; (e) notify any parties obligated on any of the Collateral to make payment to Lender and enforce collection thereof; (f) retain the Collateral or any portion of it in full or partial satisfaction of any indebtedness to Lender upon such notice as may be required by law; (g) transfer any Collateral into its own name or that of its nominee and receive the income thereon as additional security hereunder; (h) purchase any account and hold the same in its own right free from any claims or right of redemption; (i) apply any sums received or collected from or on account of Collateral, including the proceeds of any sales thereof, to the payment of any Indebtedness in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in its sole discretion determines; (j) exercise its rights of set off in the same manner as though the credit, except for such rights, were unsecured; (k) exercise any other remedy permitted by law, including all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere; and (l) exercise any remedies set forth in the Deed of Trust. All of Lender's rights and remedies shall be cumulative and not exclusive. Notwithstanding any provision tot he contrary contained in this Agreement, any notice required or permitted to be given to Borrower in connection with any or all of the foregoing remedies shall be deemed given if deposited in the United States mail, postage prepaid.

      8.3   <u>RIGHTS AND REMEDIES NON-EXCLUSIVE</u>. In addition to the specific rights and remedies hereinabove mentioned, Lender shall have the right to avail itself of any other rights or remedies to which it may be entitled, at Law or in equity, including, but not limited to, the right to realize upon any or all of Borrower's security and/or the right to enforce any Guaranty, and to do so in any order. Furthermore, the rights and remedies set forth in this Agreement are not exclusive, and Lender may avail itself of any individual right or remedy set forth in this Agreement, or available at Law or in equity, without utilizing any other right or remedy.

# 9   <u>SECTION NINE.</u>   <u>GENERAL CONDITIONS AND MISCELLANEOUS</u>

      9.1   <u>NONLIABILITY OF LENDER</u>. Borrower acknowledges and agrees that by accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to this Agreement or the other Loan Documents, including any certificate, Financial Statement, appraisal or insurance policy, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

      9.2   <u>NO THIRD PARTIES BENEFITTED</u>. This Agreement is made for the purpose of defining and setting forth certain obligations, rights, and duties of Borrower and Lender in connection with the Loan. It shall be deemed a supplement to the other Loan Documents, and shall not be construed as a modification thereof, except as provided herein. It is made for the sole protection of Borrower and Lender, and Lender's successors and assigns. No other Person shall have any rights of any nature hereunder or by reason hereof or the right to rely hereon.

9.3     INDEMNITY BY BORROWER.  Borrower hereby indemnifies and agrees to hold harmless Lender and Borrower's directors, officers, agents and employees (individually "Indemnitee") from and against:

9.3.1     Any and all claims, demands, actions or causes of action that are asserted against any Indemnitee by any Person if the claim, demand, action or cause of action, directly or indirectly, relates to a claim, demand, action or cause of action that such Person has or asserts against Borrower; and

9.3.2     Any and all liabilities, losses, costs or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any claim, demand, action or cause of action specified in this Section 9.3.

9.4     TIME IS OF THE ESSENCE.  Time is of the essence of this Agreement and of each and every provision hereof.  The waiver by Lender of any breach or breaches hereof shall not be deemed, nor shall the same constitute, a waiver of any subsequent breach or breaches.

9.5     BINDING EFFECT; ASSIGNMENT.  This Agreement shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns, except that Borrower may not assign Borrower's rights hereunder or any interest herein without the prior written consent of Lender.  Lender shall have the right to assign Borrower's rights under this Agreement or the other Loan Documents and to grant participations in the Loan to others, but all waivers or abridgements of Borrower's obligations that may be granted from time to time by Lender in writing, shall be binding upon such assignees or participants.

9.6     EXECUTION IN COUNTERPARTS.  This Agreement and any other Loan Document may be executed in any number of counterparts, and any party hereto or thereto may execute any counterpart, each of which, when executed and delivered, will be deemed to be an original, and all of which counterparts of this Agreement or any other Loan Document, as the case may be, taken together will be deemed to be but one and the same instrument.  The execution of this Agreement or any other Loan Document by any party hereto or thereto will not become effective until counterparts hereof or thereof, as the case may be, have been executed by all the parties hereto or thereto.

9.7     INTEGRATION; AMENDMENTS; CONSENTS.  This Agreement, together with the documents referred to herein, constitutes the entire agreement of the parties touching upon the subject matter hereof, supersedes any prior negotiations or agreements on such matter, and, in particular, supersedes any commitment letter from Lender to Borrower.  No amendment, modification or supplement of any provision of this Agreement or any of the other Loan Documents shall be effective unless in writing, signed by Lender and Borrower; and no waiver of any of Borrower's obligations under this Agreement or any of the other Loan Documents or consent to any departure by Borrower therefrom shall be effective unless in writing, signed by Lender, and then only in the specific instance and for the specific purpose given.

9.8     COSTS, EXPENSES AND TAXES.  Borrower shall pay to Lender, on demand:

9.8.1     The reasonable attorneys' fees and out-of-pocket expenses incurred by Lender in connection with the negotiation, preparation, execution, delivery and administration of this Agreement and any other Loan Document and any matter related thereto;

9.8.2   The reasonable costs and expenses of Lender in connection with the enforcement of this Agreement and any other Loan Document and any matter related thereto, including the reasonable fees and out-of-pocket expenses of any legal counsel, independent public accountants, and other outside experts retained by Lender, whether or not suit is filed; and

9.8.3   All costs, expenses, fees, premiums and other charges relating to or arising from this Agreement or any of the other Loan Documents or any transactions contemplated hereby or thereby or the compliance with any of the terms and conditions hereof or thereof.

9.8.4   All sums paid or expended by Lender under the terms of this Agreement which the Borrower is required to pay to the Lender shall bear interest from the date of expenditure at the default rate provided in this Agreement, and shall be immediately due and payable by Borrower upon demand.

9.9   SURVIVAL OF REPRESENTATIONS AND WARRANTIES.  All representations and warranties of Borrower contained herein or in any other Loan Document shall survive the making of the Loan and the execution and delivery of this Agreement, and are material and have been or will be relied upon by Lender, notwithstanding any investigation made by Lender or on behalf of Lender.  For the purposes of this Agreement, all statements contained in any certificate, agreement, Financial Statement, or other writing delivered by or on behalf of Borrower pursuant hereto or to any other Loan Document or in connection with the transactions contemplated hereby or thereby shall be deemed to be representations and warranties of Borrower contained herein or in the other Loan Documents, as the case may be.

9.10   NOTICES.  All notices, requests, demands, directions, and other communications provided for hereunder and under any other Loan Document (a "Notice"), must be in writing and must be mailed, telegraphed, delivered or sent by telex, cable or other form of electronic written communication to the appropriate party at its respective address set forth below or, as to any party, at any other address as may be designated by it in a written Notice sent to the other parties in accordance with this Section.

Any Notice given by any form of electronic written communication must be confirmed within forty-eight (48) hours by letter mailed or delivered to the appropriate party at its respective address.  If any Notice is given by mail, it will be effective three (3) calendar days after being deposited in the mails with first class or air mail postage prepaid; if given by any form of electronic written communication, when sent; or if given by personal delivery, when delivered.

Such Notices will be given to the following:

To Lender:   CALIFORNIA ECONOMIC DEVELOPMENT
             LENDING INITIATIVE (CEDLI)
             1333 Broadway, Suite 604
             Oakland, CA 94612
             Attn: George E. Williamson, CEO

To Borrower:  HRMC, INC.
              817 Delaware Street
              Berkeley, CA 94710
              Attention: Willie C. Cook, President

9.11    FURTHER ASSURANCES.  Borrower shall, at Borrower's sole expense and without expense to Lender, do, execute and deliver such further acts and documents as Lender from time to time may reasonably require for the purpose of assuring and confirming unto Lender the rights hereby created or intended, now or hereafter so to be, or for carrying out the intention or facilitating the performance of the terms of any Loan Documents, or for assuring the validity of any security interest.

9.12    GOVERNING LAW.  The Loan shall be deemed to have been made in California, and this Agreement and the other Loan Documents shall be governed by and construed and enforced in accordance with the Laws of the State of California.  Borrower hereby consents to the jurisdiction of any competent federal or state court within California, unless otherwise agreed to in a writing signed by Lender or its assignee.

9.13    SEVERABILITY OF PROVISIONS.  If any provision of this Agreement or of any of the other Loan Documents is held by a court of competent jurisdiction to be inoperative, unenforceable or invalid, such provision shall be inoperative, unenforceable or invalid without affecting the remaining provisions; this Agreement and the other Loan Documents shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement or the other Loan Documents; and to this end the provisions of this Agreement and the other Loan Documents are declared to be severable, remaining in full force and effect.

9.14    JOINT AND SEVERAL OBLIGATIONS.  If this Agreement is executed by more than one person as Borrower, the obligations of each of such persons hereunder shall be joint and several obligations.

9.15    CONSTRUCTION CONFLICTS.  Whenever the context of this Agreement requires, the singular shall include the plural and the neuter gender shall include the feminine and/or masculine.

9.16    HEADINGS.  Article and Section headings in this Agreement are included for convenience of reference only and are not part of this Agreement for any other purpose.

9.17    JURY TRIAL WAIVER.  -IN ANY ACTION BROUGHT BY LENDER, BORROWER, OR ANY THIRD PARTY ARISING UNDER THIS AGREEMENT OR ANY DOCUMENT OR INSTRUMENT EXECUTED IN CONNECTION THEREWITH, INCLUDING, WITHOUT LIMITATION, ANY ACTION BASED UPON FRAUD, NEGLIGENCE, BREACH OF CONTRACT, WASTE, INTENTIONAL TORT OR NEGLIGENT TORT, BORROWER HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY AND AGREES THAT SUCH ACTION SHALL BE TRIED BY THE COURT ONLY.  BORROWER FURTHER AGREES TO EXECUTE AND TO FILE WITH ANY COURT IN WHICH ANY SUCH ACTION IS COMMENCED, ANY DOCUMENTS OR INSTRUMENTS NECESSARY TO EVIDENCE OR TO EFFECTUATE THIS WAIVER OF TRIAL BY JURY.

[Signature page follows]

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement on the date first above written.

**"Lender"**

CALIFORNIA ECONOMIC DEVELOPMENT
LENDING INITIATIVE

By: _George E. Williamson_____

George E. Williamson
Its: President and CEO

**"Borrower"**

HRMC, INC.,
a California corporation

By: _Willie C. Cook_____

Willie C. Cook
Its: President

EXHIBIT "A"

LEGAL DESCRIPTION OF THE RESIDENCE

THE LAND REFEERD TO HERIN BELOW IS SITUATED IN THE CITY OF BERKEKEY, COUNTY OF ALAMEDA, STATE OF CALOFIRNIA, AND IS DESCRIBED AS FOLLOWS;

Lot 9, Block123, corrected Map of the Raymond Tract filed September 21, 1887, Map Book 10, Page 12, Alameda County Records.

APN: 056-1937-009

35

**EXHIBIT B**

**FORM OF COMPLIANCE CERTIFICATE**

Dated: _____

TO:    CALIFORNIA ECONOMIC DEVELOPMENT
       LENDING INITIATIVE
       1333 Broadway, Suite 604
       Oakland, California 94612
       Attn: George E. Williamson

Ladies and Gentlemen:

The undersigned hereby certifies to you pursuant to the Loan and Security Agreement dated as of September 9, 2005 ("Agreement"), between HRMC, INC., a California corporation ("Borrower"), and CALIFORNIA ECONOMIC DEVELOPMENT LENDING INITIATIVE, a California corporation ("Lender"), as follows:

As of _____, no Event of Default or event which with the lapse of time or the giving of notice, or both, would become an Event of Default (an "Unmatured Event of Default") has occurred [except: (Specify nature and extent of such Event of Default and/or Unmatured Event of Default) _____

_____.

If applicable, the corrective action taken or proposed to be taken to prevent or cure such Event of Default or Unmatured Event of Default is as follows:

_____
_____

___.

As of _____, Borrower maintains the following financial covenants pursuant to the Agreement:

A)    Compliance with Section 6.9–Debt Service Ratio:

    _____

B)    Compliance with Section 6.12–Limitation of New Debt.
    $_____

The financial statements and/or reports submitted as of this date are true, complete, correct and consistent with generally accepted accounting principles. The undersigned certifies that the calculations made and the information confirmed herein are derived from such financial statements and reports and that each and every matter confirmed herein correctly reflects those financial statements and reports.

Case: 10-40075    Doc# 100-1    Filed: 11/16/10    Entered: 11/16/10 14:27:00    Page 12 of 21

36

Any and all capitalized terms set forth in this certificate without definition shall have the respective meanings ascribed thereto in the Agreement.

BORROWER:

HRMC, INC.,
a California corporation

By: _Willie C. Cook_

Willie C. Cook
Its: President

438436.1                                2

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Denise McCain
2020 Hurley Way, Suite 350
Sacramento, CA 95825

Acknowledged
File Date: 9/8/05
File Number: 057040666296
Jurisdiction: California

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | HRMC, Inc. | | | | |
|---|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS 817 Delaware Street | CITY Berkeley | STATE CA | POSTAL CODE 94710 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS 943367871 | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corp. | 1f. JURISDICTION OF ORGANIZATION California | 1g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | CALIFORNIA ECONOMIC DEVELOPMENT LENDING INITIATIVE | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS 1333 BROADWAY, SUITE 604 | CITY OAKLAND | STATE CA | POSTAL CODE 94612 | COUNTRY US |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**

| 5. ALTERNATIVE DESIGNATION [if applicable] | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ THIS FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY - UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

EXHIBIT _____

**EXHIBIT "A"**
**COLLATERAL DESCRIPTION**

DEBTOR:                 HRMC, INC.
SECURED PARTY:     CALIFORNIA ECONOMIC DEVELOPMENT LENDING
                                  INITIATIVE

COLLATERAL:

      All of Debtor's right, title and interest in and to Debtor's Accounts, Inventory, Equipment, Investment Property, Instruments, Chattel Paper, and General Intangibles, now owned or hereafter acquired, now existing and hereafter created or arising, fixed and contingent, and wherever located, which include the property covered by the defined terms below and shall also include all proceeds thereof including, without limitation, proceeds of insurance thereof and any and all Accounts, General Intangibles, Inventory, Equipment, Investment Property, Instruments, Chattel Paper, money, deposit accounts, or other tangible or intangible property of Debtor resulting from the sale or disposition of any such property, and the proceeds thereof.

      The term "Accounts" means and includes all presently existing and hereafter arising accounts, contract rights, instruments, documents, chattel paper, and all other forms of obligations owing to Debtor arising out of the sale or lease of goods or the rendition of services by Debtor, whether or not earned by performance, and any and all credit insurance, guaranties and other security therefor, as well as all merchandise returned to or reclaimed by Debtor and Debtor's Books (except minute books) relating to any of the foregoing.

      The term "Debtor's Books" means and includes all of Debtor's books and records including, but not limited to: minute books; ledgers; records indicating, summarizing or evidencing Debtor's assets, liabilities, the Accounts, the Equipment, the General Intangibles, the Inventory and all information relating thereto; records indicating, summarizing or evidencing Debtor's business operations or financial condition; and all computer programs, disc or tape files, printouts, runs, and other computer-prepared information and the equipment containing such information, and all contract rights with third parties relating to the maintenance of any and all of the foregoing.

      The term "Equipment" means and includes all of Debtor's present and hereafter-acquired machinery, machine tools, equipment, fixtures, office equipment, furniture, furnishings, motors, motor vehicles, tools, dies, parts, jigs, goods (including, without limitation, each of the types of equipment set forth on any schedule which is either now or in the future attached hereto), and any and all additions, attachments, accessories, accessions and improvements thereto, and all substitutions therefor and replacements thereof; all present and future drawings, blueprints, reports, catalogs and computer programs relating thereto; and all of Debtor's Books relating to any of the foregoing.

      The term "Investment Property" means and includes all of Debtor's present and future investment property, including, without limitation, securities, security entitlements, securities accounts, commodity contracts, and commodity accounts.

The term "General Intangibles" means and includes all of Debtor's present and future general intangibles and other personal property (including, without limitation, any and all deposit accounts, choses or things in action, goodwill, patents, trade names, trademarks, blueprints, drawings, purchase orders, computer programs, computer discs, computer tapes, literature, reports, catalogs, deposit accounts and tax refunds), letters of credit, letter of credit rights, health care insurance receivables, other than goods and accounts, as well as Debtor's Books relating to any of the foregoing.

The term "Inventory" means all present and future inventory in which Debtor has any interest, including, but not limited to, goods, machinery and equipment held by Debtor for sale or lease or to be furnished under a contract of service; all of Debtor's present and future raw materials, work in process, finished goods, and packing and shipping materials, wherever located; any documents of title representing any of the above; and all of Debtor's Books relating to any of the foregoing.

The term "Instrument" means a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment.

The term "Chattel Paper" means a record or records that evidence both a monetary obligation and a security interest in specific goods, a security interest in specific goods and software used in the goods, a security interest in specific goods, and license of software used in the goods, a lease of specific goods, or a lease of specific goods and license of software used in the goods.

Case: 10-40075    Doc# 100-1    Filed: 11/16/10    Entered: 11/16/10 14:27:00    Page 16 of 21



# Loan Payoff

Date Printed: 02/22/2010

HRMC, INC.
ATTN: WILLIE C. COOK
817 DELAWARE STREET
BERKELEY CA 994710

| | |
|---|---|
| Loan Number | 200508460DS |
| Short Name | HRMC, INC. |
| Loan Group | COL-LENDING TERM LOANS |
| Loan Date | 09/12/2005 |
| Maturity Date | 09/15/2012 |
| Payoff Date | 02/23/2010 |
| Interest Rate | 7.25000% |
| Per Diem | $27.52171 |
| Principal Balance | $136,659.55 |
| Accrued Interest | $4,151.29 |
| Late Charges Due | $2,427.97 |
| Payoff Amount | $143,238.81 |

EXHIBIT







Loan Payments Due Report
Loan#: 200508460DS
Shortname: HRMC, INC.

| Date Due | Pmt# | Type | Transcode | Late Fee | Amount | Amount Paid | Balance |
|---|---|---|---|---|---|---|---|
| 02/15/2010 | 57 | Interest | 122 | 1 | 853.17 | 0.00 | 853.17 |
| 02/15/2010 | 51 | Principal | 120 | 1 | 3,205.13 | 0.00 | 3,205.13 |
| | | TOT PAYMENT | | | 4,058.30 | 0.00 | 4,058.30 |
| 01/27/2010 | | Late Fee | 150 | 0 | 202.92 | 0.00 | 202.92 |
| | | TOT PAYMENT | | | 202.92 | 0.00 | 202.92 |
| 01/15/2010 | 56 | Interest | 122 | 1 | 853.18 | 0.00 | 853.18 |
| 01/15/2010 | 50 | Principal | 120 | 1 | 3,205.13 | 0.00 | 3,205.13 |
| | | TOT PAYMENT | | | 4,058.31 | 0.00 | 4,058.31 |
| 12/27/2009 | | Late Fee | 150 | 0 | 201.54 | 0.00 | 201.54 |
| | | TOT PAYMENT | | | 201.54 | 0.00 | 201.54 |
| 12/15/2009 | 55 | Interest | 122 | 1 | 825.65 | 0.00 | 825.65 |
| 12/15/2009 | 49 | Principal | 120 | 1 | 3,205.13 | 0.00 | 3,205.13 |
| | | TOT PAYMENT | | | 4,030.78 | 0.00 | 4,030.78 |
| 11/27/2009 | | Late Fee | 150 | 0 | 203.29 | 0.00 | 203.29 |
| | | TOT PAYMENT | | | 203.29 | 0.00 | 203.29 |
| 11/15/2009 | 54 | Interest | 122 | 1 | 860.57 | 0.00 | 860.57 |
| 11/15/2009 | 48 | Principal | 120 | 1 | 3,205.13 | 0.00 | 3,205.13 |
| | | TOT PAYMENT | | | 4,065.70 | 0.00 | 4,065.70 |
| 10/27/2009 | | Late Fee | 150 | 0 | 187.18 | 0.00 | 187.18 |
| | | TOT PAYMENT | | | 187.18 | 0.00 | 187.18 |
| 10/15/2009 | 53 | Interest | 122 | 1 | 538.55 | 0.00 | 538.55 |
| 10/15/2009 | 47 | Principal | 120 | 1 | 3,205.13 | 0.00 | 3,205.13 |
| | | TOT PAYMENT | | | 3,743.68 | 0.00 | 3,743.68 |
| 09/27/2009 | | Late Fee | 150 | 0 | 204.19 | 0.00 | 204.19 |
| | | TOT PAYMENT | | | 204.19 | 0.00 | 204.19 |
| 09/15/2009 | 46 | Principal | 120 | 1 | 3,205.13 | 0.00 | 3,205.13 |
| | | TOT PAYMENT | | | 4,083.80 | 878.67 | 3,205.13 |
| 08/27/2009 | | Late Fee | 150 | 0 | 204.19 | 0.00 | 204.19 |
| | | TOT PAYMENT | | | 204.19 | 0.00 | 204.19 |
| 08/15/2009 | 45 | Principal | 120 | 1 | 3,205.13 | 0.00 | 3,205.13 |
| | | TOT PAYMENT | | | 4,083.79 | 878.66 | 3,205.13 |
| 07/27/2009 | | Late Fee | 150 | 0 | 202.77 | 0.00 | 202.77 |
| | | TOT PAYMENT | | | 202.77 | 0.00 | 202.77 |
| 07/15/2009 | 44 | Principal | 120 | 1 | 3,205.13 | 0.00 | 3,205.13 |
| | | TOT PAYMENT | | | 4,055.46 | 850.33 | 3,205.13 |
| 06/27/2009 | | Late Fee | 150 | 0 | 204.19 | 0.00 | 204.19 |
| | | TOT PAYMENT | | | 204.19 | 0.00 | 204.19 |
| 06/15/2009 | 43 | Principal | 120 | 1 | 3,205.13 | 0.00 | 3,205.13 |
| | | TOT PAYMENT | | | 4,083.80 | 878.67 | 3,205.13 |
| 05/27/2009 | | Late Fee | 150 | 0 | 202.87 | 0.00 | 202.87 |
| | | TOT PAYMENT | | | 202.87 | 0.00 | 202.87 |
| 05/15/2009 | 42 | Principal | 120 | 1 | 3,205.13 | 0.00 | 3,205.13 |
| | | TOT PAYMENT | | | 4,057.39 | 852.26 | 3,205.13 |
| 04/27/2009 | | Late Fee | 150 | 0 | 205.80 | 0.00 | 205.80 |
| | | TOT PAYMENT | | | 205.80 | 0.00 | 205.80 |
| 04/15/2009 | 41 | Principal | 120 | 1 | 3,205.13 | 0.00 | 3,205.13 |
| | | TOT PAYMENT | | | 4,116.07 | 910.94 | 3,205.13 |
| 03/27/2009 | | Late Fee | 150 | 0 | 201.84 | 0.00 | 201.84 |
| | | TOT PAYMENT | | | 201.84 | 0.00 | 201.84 |
| 03/15/2009 | 39 | Principal | 120 | 1 | 3,205.13 | 878.67 | 2,326.46 |
| | | TOT PAYMENT | | | 4,036.85 | 1,710.39 | 2,326.46 |
| 02/27/2009 | | Late Fee | 150 | 0 | 207.19 | 0.00 | 207.19 |
| | | TOT PAYMENT | | | 207.19 | 0.00 | 207.19 |
| | | SUMMARY | | | | | |
| | | Interest | | | 3,931.12 | 0.00 | 3,931.12 |
| | | Principal | | | 38,461.56 | 878.67 | 37,582.89 |
| | | Late Fee | | | 2,427.97 | 0.00 | 2,427.97 |
| | | GRAND TOTAL | | | 44,820.65 | 878.67 | 43,941.98 |

Case: 10-40075    Doc# 100-1    Filed: 11/16/10    Entered: 11/16/10 14:27:00    Page 19 of 21

43

**PROOF OF SERVICE**

I, the undersigned, declare and certify as follows:

I am over the age of eighteen years, not a party to the within action and employed in the County of Los Angeles State of California. I am employed in the office of Frandzel Robins Bloom & Csato, L.C., members of the Bar of the above-entitled Court, and I made the service referred to below at their direction. My business address is 6500 Wilshire Boulevard, Seventeenth Floor, Los Angeles, California 90048-4920

On November 16, 2010, I served true copy(ies) of the **CALIFORNIA ECONOMIC DEVELOPMENT LENDING INITIATIVE'S OPPOSITION TO DEBTOR'S MOTION FOR ORDER APPROVING BIDDING PROCEDURES FOR THE SALE OF THE PROPERTY OF THE ESTATE AND RELATED MATTERS AND OBJECTING TO THE SALE**, the original(s) of which is(are) affixed hereto. to the party(ies) on the attached service list.

☒ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such document(s) were placed in envelopes addressed to the person(s) served hereunder for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

☐ **BY FAX TRANSMISSION:** At approximately _____, I caused said document(s) to be transmitted by facsimile. The telephone number of the sending facsimile machine was (323) 651-2577. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

☐ **BY E-MAIL:** At approximately _____, I caused said document(s) to be transmitted by electronic mail. The name(s) and e-mail addresses of the person(s) served are set forth in the service list. The document was transmitted by electronic transmission and without error.

☐ **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder.

I certify under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on November 16, 2010, at Los Angeles, California.

Evelyn Kidder

664614.1 | 019917-0470

1

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

# SERVICE LIST

Debtor
HRMC, Inc.
817 Delaware Street
Berkeley, CA 94710

Counsel for Debtor
Charles R. Duffy
Law Offices of Butterfield and Duffy
33 E. Huntington Drive
Arcadia, CA 91006

U.S. Trustee
Office of the U.S. Trustee
1301 Clay Street, #690N
Oakland, CA 94612

Counsel for Creditor Burger King Corporation
Vincent M. Coscino
James A. Timko
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
1900 Main Street, Fifth Floor
Irvine, CA 92614-7321